UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
UNITED STATES OF AMERICA,

   -against-                           **MEMORANDUM AND ORDER**
                                              Case No. 19-CR-115-FB

DANIEL MARTIN KATZ,

              Defendant.
---------------------------------------------------x

*Appearances:*
*For the United States:*                       *For the Defendant:*
JAMES P. MCDONALD                 ISABELLE A. KIRSHNER
KAYLA C BENSING                     THOMAS W. DOLLAR
Assistant United States Attorneys     Clayman & Rosenberg LLP
Eastern District of New York          305 Madison Avenue, Suite 650
271 Cadman Plaza East                New York, New York 10165
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

       Having been convicted of abusive sexual contact, a felony, and simple assault, a misdemeanor, Daniel Katz moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33. Due to the numerous grounds raised, the Court addresses the motions in the following, bullet-point format:

<u>Motion for Judgment of Acquittal</u>

- **Permission:** The Court instructed the jury that the government had to prove that sexual contact occurred without the victim's express or implied permission. The Court reaffirms its prior ruling, based on *United States v.*

1

*Price*, 980 F.3d 1211 (9th Cir. 2019), that the government was not required to prove that the defendant subjectively knew that he lacked permission.

Katz argues that the government failed to provide that element beyond a reasonable doubt. On the contrary, Gina unequivocally testified that she did not say or do anything to convey permission. That alone was sufficient to satisfy the government's burden.

Katz objects that Gina could not testify about her actions while asleep. As an initial matter, the Court must assume that the jury rejected Katz's testimony that Gina "seemed conscious." The Court rejects Katz's theory that a sleeping person could communicate anything that a reasonable person could interpret as permission. *See Price*, 980 F.3d at 1138 (Gilman, J., concurring) ("A sleeping person clearly gives no implicit permission to be touched.").

- **Venue:** Katz argues that the government failed to prove venue, which, in this case, was based on the flight's arrival at JFK, which is within the Eastern District of New York. *See* 18 U.S.C. § 3237 ("Any offense involving . . . transportation in interstate or foreign commerce, or the importation of an object or person into the United States . . . may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.").

    Katz waived his objection to venue. *See United States v. Rivera*, 388 F.2d 545, 548 (2d Cir. 1968) ("[W]here as here a motion for acquittal is made on specified grounds which do not include any objection to venue, we think that objection has been waived."). Had Katz timely challenged venue after the government rested, it could have reopened its case and easily established that the flight's destination was JFK. Indeed, Katz himself testified during his case that the plane landed at JFK.

## Motion for New Trial

- **Weight of the Evidence:** The key evidence in the case was the conflicting accounts of Katz and Gina. Each witness's testimony was subject to vigorous cross-examination and the usual challenges to credibility. The evidence did not "preponderate[] heavily" either way. *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020). Therefore, the credibility

assessments and ultimate decision to credit Gina's account were matters for the jury.

- **Definition of Permission:** Katz argues that the government gave a misleading definition of permission in its summation that incorrectly focused on Gina's subjective intent. The Court disagrees. The government argued—adamantly, to be sure—that it would be unreasonable to conclude that a sleeping person conveyed implicit permission to be touched. In any event, the Court correctly defined permission for the jury and told it repeatedly that it should follow the Court's instructions, and not the lawyers', on matters of law.

- **Knowledge:** Katz repeats his argument that the Court should have instructed the jury that the government had to prove knowledge of lack of permission as a ground for a new trial. The Court has already addressed the argument in connection with the motion for judgment of acquittal.

  Katz objects that the Court did not hold a charge conference until after he had testified. This is simply the Court's usual practice.

- **Expert Witness:** Katz argues that Karen Carroll should not have been qualified as an expert witness. He does not elaborate, but her testimony established that she had extensive training in forensic nursing and the evaluation of sexual assault victims. Her testimony that a person could experience nonconsensual sexual arousal undoubtedly helped the jury understand a potentially counterintuitive concept.

  Katz further argues that Carroll went beyond the scope of her expertise when she offered a definition of "consent" that differed from the Court's definition of "permission." He does not elaborate the difference or how it was prejudicial. In any event, the Court carefully explained to the jury that the Court's instructions on the law controlled.

- **Bolstering:** Katz argues that Carroll and fact witness Pamela Russell improperly bolstered Gina's testimony. On the contrary, Carroll explained that victims of sexual assault respond in a variety of ways, and that Gina's reactions during and after the encounter were not necessarily inconsistent with a nonconsensual encounter. Russell testified that Gina contacted a

3

sexual assault hotline to report the encounter.  The Court is satisfied that the jury understood that neither witness could independently corroborate Gina's version of events.

- **Evidentiary Rulings:**  Katz argues that the Court erred in barring questions about actions Gina "possibly" took while asleep.  The Court adheres to its ruling that the line of questioning was speculative and potentially confusing.

    Katz argues that the Court erred in allowing photos of the darkened cabin into evidence.  There was, however, no dispute that the cabin was dark during the incident.

    Katz argues that the Court erred in admitting evidence that Katz declined to speak to the FBI following the incident.  The Court allowed the evidence to clarify Katz's potentially misleading testimony that he had contacted the FBI but had not heard back from them prior to his arrest.

- **Jury Instructions:**  Katz objects to the Court's elaborating on its instruction not to speculate with a story about a dead witness.  The Court has recounted the same story on numerous occasions without incident, and remains convinced that its instructions to the jury appropriately conveyed the difference between permissible inferences based on evidence and impermissible speculation.

    Katz objects to the Court's statement that juror bias was not likely to pose a problem.  The statement came in the context of an explicit instruction *not* to be swayed by bias.

    Katz argues that the Court's instruction regarding a defendant's testimony was error because it "incorporat[ed] by reference" the general credibility instruction regarding witness bias.  The instruction was given at Katz's behest and was crafted specifically to avoid the implication that a defendant has an incentive to lie simply because he is the defendant.

    Katz raises a several other small instructional errors.  Having considered them, the Court concluded that they did not individually or collectively affect the jury's verdict.

4

- **Jury Deliberations:** Katz complains that the Court accommodated jury requests to attend graduations, resulting in rushed deliberations. The Court emphatically told the jury not to do so, however, and the record reflects that the jury returned after the first day of deliberations before reaching a verdict. There was no rush to judgment.

- **Prosecutorial Misconduct:** Katz claims that the government violated its *Brady* and *Giglio* obligations by not turning over the name and contact information of the creator of the Onboard Cabin Report. Even assuming that a witness's identity is somehow exculpatory, the government put Katz's attorney in contact with the airline's attorney, who provided the employee's name. Katz further argues that the government failed to turn over statements by other crew members, but these were apparently disclosed a little more than a week before trial.

    Katz challenges the propriety of the government's summation. First, he argues that a PowerPoint slide used during the summation omitted the definition of "implied permission." The Court, however, gave the full definition and explicitly told the jury to disregard anything inconsistent with the Court's instructions. The Court is satisfied that the jury understood that implied permission was the key issue in the case.

    Second, Katz argues that the government's summation suggested that Katz had fabricated a trip to an elephant sanctuary, a fact the government knew to be true. A fair reading of the transcript reflects that the government's argument was that Katz had fabricated an in-depth conversation with Gina about the trip, not the trip itself.

    Finally, Katz argues that the government made references to statements not in evidence and mischaracterized testimony. As with statements of law, the Court emphasized to the jury that the lawyers' summations were not evidence and that they should disregard anything contrary to their recollection of the evidence.

5

## **CONCLUSION**

For the foregoing reasons, Katz's motions are denied.

**SO ORDERED.**

                                               /S/ Frederic Block
                                              FREDERIC BLOCK
                                              Senior United States District Judge

Brooklyn, New York
December 7, 2022